## SHACKLEFORD v. TURNER & CLAYTON, Inc.   (No. 1882.)

(Court of Civil Appeals of Texas. El Paso. March 18, 1926. Rehearing Denied April 15, 1926.)

**1. Contracts ⬌143.**

Where there is a clear expression of agreement in contract, there can be no implication contrary thereto.

**2. Contracts ⬌350(1)—Evidence held not to sustain finding of express or implied warranty of derrick for pulling casing.**

In action on note executed in part payment for building derricks, evidence *held* not to support finding of express or implied warranty of derricks for pulling casing.

Appeal from District Court, Eastland County; Elzo Beén, Judge.

Suit by Joe H. Shackleford against Turner & Clayton, Inc. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Grisham Bros., of Eastland, for appellant.
Turner, Seaberry & Springer, of Eastland, for appellee.

WALTHALL, J. This suit was brought by appellant, Joe H. Shackleford, to recover of appellee, Turner & Clayton, Inc., a corporation, the sum of $892.80, the balance due upon a promissory note, executed and delivered by appellee to appellant.

Appellee pleaded failure of consideration, alleging that the note sued upon arose out of, and was a part of, a prior verbal agreement between appellant and appellee, by the terms of which appellant agreed with appellee that he would, at his own expense, tear down three derricks owned by appellee and rebuild for appellee two derricks on leases owned by appellee, and that appellant specifically, and if not, then in the alternative, impliedly warranted that the two derricks when completed would be capable of standing, under the wear and tear incident to the drilling of an oil and gas well, on each of the two leases to an approximate depth of 3,400 feet, and that appellant should be paid therefor the sum stated, for a part of which the note was given, for a complete and turnkey job on the contract; that the derricks would be built so that they would be serviceable for the services and purposes for which they were intended; that, pursuant to said agreement, appellant did tear down said three derricks, and erected one on each of said two leases,

and advised appellee that the two derricks had been completed according to the express contract as agreed, whether expressly or impliedly, warranting same as above. Whereupon the note sued upon was executed as a part of the contract price for the two derricks. The answer further alleges that appellee proceeded to drill an oil and gas well on each of said two leases, using good and serviceable material, and skilled employés, and, during the time the two wells were being drilled, and while pulling the pipe and casing from the hole, and without fault on its part, the derricks on each of said leases "pulled in"; that is, collapsed and fell while being so used; that the collapse in each instance was the direct and proximate result of faulty material used, contrary to the contract; that, in order to repair the derricks and make them serviceable, it became necessary for appellee to furnish additional material and labor, stating the value of each.

Appellee prayed that, the consideration for the note having failed, the note be canceled, and that it have judgment by way of cross-action for the value of the material and labor furnished in rebuilding the derricks.

The trial was before the court without a jury, and judgment rendered that appellant recover on his note, and that appellee recover on its cross-action, resulting in a final judgment in favor of appellant in the sum of $192.80, from which appellant prosecutes this appeal. The court made no findings of fact.

## Opinion.

The uncontroverted testimony of all the witnesses was to the effect that the two derricks pulled in, that is, collapsed, in each instance while being used in pulling the casing. The contract for the erection of the two derricks was oral.

[1, 2] B. H. Lancaster represented appellant in making the contract for the erection of the two derricks. He testified:

"As to the terms of the contract between me and Turner & Clayton, Mr. Paul Turner and Mr. Clayton had bought three rigs out near Lee Ray. I was to take these three rigs and build two out of them; one on the Harwood lease and one on the Steel. We had quite a little argument about the price of the derricks, but finally agreed on some price, and so Mr. Turner—Paul Turner, or Mr. Clayton, but I think it was Paul—asked me if I would guarantee these rigs. I told him I would guarantee them like we did all rigs. I would guarantee the workmanship, but I wouldn't guarantee it not to pull in in pulling pipe; wouldn't no contractor do that. I told him however good you might build a rig it might be pulled in. We agreed on a price that I was to charge him, but I disremember what it was. We were to build two rigs under the contract."

After testifying as to the material and the workmanship, on cross-examination he said:

"As to what was said about not guaranteeing the pipe, he asked me to what extent I would guarantee it, and I told him that I wouldn't guarantee any rig to pull pipe. At the time we had this conversation the Steel well wasn't spudded in, and the Harwood wasn't spudded in. The reason we were discussing that, we always do that in selling a rig. They asked a guarantee on the assumption of that fact. It is the custom with lots of rig-building contractors to do that. You can pull in any rig in pulling pipe. I did not build that rig for the specific purpose of pulling pipe. I knew that before it was completed they would have to pull that big pipe out. I contracted to build a rig to drill a well. I knew that included pulling the pipe, but we wouldn't guarantee the pulling of the pipe with it. I built the rig for the purpose of drilling a well and pulling the pipe, but I wouldn't guarantee it. I told him that I would use good workmanship and good material so that it would drill a well and pull the pipe, but I wouldn't guarantee pulling the pipe. The reason I had for that, you can take a new rig and pull so hard and unreasonable that you can pull in the rig. * * * I knew they wanted to pull a ten-inch casing out of the well, and I knew that was what they wanted the rig up there for. I knew that was the first pull that would be made. He told me he wanted it strong enough to pull pipe out, and we made it strong. * * * I superintended the building of both these derricks. They were built with good lumber, and in a workmanlike manner, sufficient to drill wells to the depth of 3,200 feet. But it wasn't contemplated at that time that they would be used for the pulling of pipe in either well until renailed and re-enforced."

Joe H. Shackleford testified in his own behalf. He said:

"I was present when Mr. Lancaster, my foreman, closed the trade with Turner & Clayton with reference to building the derricks. I wasn't present when the first negotiations begun. I heard Mr. Lancaster testify with reference to telling Messrs. Clayton & Turner that we never guarantee the derricks against pulling pipes. * * * We came over here and found Mr. Turner at the Charlotte Hotel. We called him out and had a talk with regard to the pay and what class rig to build. We mentioned specifically that we could not guarantee the rig against pipe pulling for the simple reason there would be quite a number of causes for this rig to give trouble at that time, and we went on to give the different causes."

Appellee bases his suit upon a parol contract, express or implied, to warrant the efficiency of each of the two derricks for pulling casing in the oil and gas wells. The above excerpts taken from the testimony of the witnesses embrace all the evidence found in the record in any way relating to the contract on the issue as to the warranty of the efficiency of the derricks for pulling casing.

To sustain the judgment on the cross-action and cancel the unpaid balance of the note, or to allow damages for the expense of rebuilding the derricks occasioned by them pulling in while drawing casing, necessarily

is based on a finding of the court that appellee, expressly or impliedly, warranted the derricks for pulling the casing. While the evidence clearly shows that appellant agreed to construct the two derricks out of the material taken from the three derricks, using such additional material as was necessary to construct standard derricks, both as to material used and built in a good workmanlike manner, to be used in drilling the wells to an approximate depth of 3,400 feet, the evidence as clearly shows that in making the contract for erecting the derricks the matter arose in the conversation as to whether appellant would or would not warrant (the word "guarantee" is used in the evidence) the derricks for pulling the casing, and that appellant expressly declined to warrant the derricks for pulling the casing; thereby giving a direct expression in words of intention to the contract that the strength or efficiency of the derricks was not warranted to pull casing. The wells were each drilled to depths approximately 3,200 feet, when at such depths the derricks pulled in, in each instance, while pulling the casing.

To hold that appellant warranted the derricks for pulling the casing would be to make a contract for the parties in direct opposition to what they agreed for themselves. Where there is a clear expression of agreement in contracting, there can be no implication contrary thereto.

We find no evidence in the record of an express or implied warranty of the derricks against pulling casing.

The case is reversed and here rendered for appellant in the sum of $892.80, the amount found by the trial court to be due upon the promissory note sued upon.

Reversed and rendered.